UNITED STATES DISTRICT COURT
FOR THJE DISTRICT OF NEW MEXICO

SHEILA HURLEY,

      Plaintiff,

vs.

Case No. 20 CV 00850
Civil Rights Complaint Pursuant to 42 USC Sec. 1983

STEPHANIE A. FUCHS, JEFFREY S. SMITH,
JENNIFER FELLABAUM, ANDREW SAUL as
COMMISSIONER of the SOCIAL SECURITY
ADMINISTRATION, and the SOCIAL SECURITY
ADMINISTRATION.

**FIRST AMENDED COMPLAINT**

JURISDICTION and THE PARTIES

    1. Plaintiff Sheila Hurley is a citizen of New Mexico who presently resides at PO Box 25071, Albuquerque, NM 87125. At all times relevant to the matters herein, she was a qualified individual with a disability within the meaning of the ADA, and was the sole caretaker for her daughter, who also has a disability. Between August 6, 2017 and April 19, 2019, Plaintiff was an employee of the Social Security Administration, working as a decision writer at its Office of Hearing Operations in Albuquerque, New Mexico.

    2. Defendant Stephanie Fuchs is a citizen of Albuquerque, New Mexico, and is employed as a Group Supervisor of the Social Security Administration's ("SSA") Office of Hearing Operations ("OHO") on Broadway Boulevard in Albuquerque, New Mexico. At the time the claims alleged in this compliant arose, Defendant Fuchs was acting under color of state law, as a federal employee of the SSA, and supervisor over the Plaintiff when she was employed in the Albuquerque OHO office. Ms. Fuchs is sued in her individual and official capacity as to all Counts. Defendant Fuchs is liable in her official capacity as to all counts and also personally liable for certain violations, including violations of the Fair Labor Standards Act.

    3. Defendant Jeffrey S. Smith is a citizen of Tijeras, New Mexico, and is employed as the Hearing Office Director for the SSA's Office of Hearings Operations in Albuquerque, New Mexico. At the time the claims alleged in this compliant arose, Defendant Smith was acting under color of state law,

as a federal employee and supervisor over all administrative staff in the Albuquerque OHO office, including Ms. Fuchs.

4. Defendant Andrew Saul is the Commissioner of the Social Security Administration, located at 6401 Security Boulevard, Baltimore, Maryland 21235. The Agency was created by Congress in 1935 to administer America's social security programs, and provide benefits to qualified retired and disabled workers and their dependents, and to survivors of insured workers. At all pertinent times the Agency was, is and has been an employer engaged in an industry affecting commerce with 50 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and meets the definition of "employer" set forth in the ADA. At all times, the Social Security Administration has been a covered entity under the ADA and the Defendant was the employer of the Plaintiff within the meaning of the FMLA and FLSA.

5. Jurisdiction is involved pursuant to Sections 1331 and 1343 of Title 28, 28 U.S.C. Sec. 1353(3), 42 U.S.C. Sec. 1983 and this Court would have supplemental jurisdiction over the claims arising under the laws of the State of New Mexico. The unlawful employment practices complained of occurred in this District, and venue is proper.

A. <u>NATURE OF THE CASE</u>

6. This is an action under the ADA, FMLA, FLSA and under the law of the State of New Mexico to correct and remedy unlawful employment practices by the Defendants.

7. Plaintiff Hurley was an excellent employee of SSA, with excellent reviews by her managers and the judges for whom she wrote decisions, between August 6, 2017 and April 19, 2019. The Defendants violated Plaintiff's rights under the FLSA and New Mexico Wage and Hour laws by instructing her to work through lunch hours and by failing to pay her for thouse hours throughout her employment from August 6, 2017 through April 19, 2019. This was willful. It was also known by SSA management and by the Defendants that Plaintiff and many other decision writers and attorney advisors worked through lunch and during other "off the clock" hours and were not compensated for that work, despite being workers who were covered by the overtime provisions of the FLSA.

8. Further, the Defendants failed to honor a reasonable accommodation to look after a daughter with a disability, in violation of the ADA and the FMLA. Instead, they used the Plaintiff's need for the accommodation to take adverse action against her. The Defendants discriminated against Plaintiff in violation of the ADA by failing to accommodate my hand osteoarthritis, and retaliated against me for complaining about adverse worse assignments, by taking adverse action and increasing my workload. Defendant SSA also violated COBRA.

9. The adverse actions consisted of failing to accommodate my disabling osteoarthritis condition; providing me with terms and conditions of employment different from those of similar employees; retaliating against me by attempting to end my employment.

## CAUSES OF ACTION

10. Plaintiff alleges that the following of her constitutional rights, privileges or immunities have been violated and that the following facts form the basis for her allegations.

## COUNT I

### Violations of the Fair Labor Standards Act of 1938 (FLSA)

11. The Plaintiff incorporates and realleges paragraphs 1 through 10 of this Complaint as if fully set forth here.

12. The Plaintiff was a non-exempt worker at the SSA OHO, as are all decision writers. SSA is an employer under the provisions of the FLSA, and subject to its overtime compensation provisions.

13. The Plaintiff typically worked a daytime shift, in excess of 40 hours per week throughout her employment at SSA OHO, between August 6, 2017 and April 19, 2019. She typically worked during all lunch hours, so that she would typically work at least five hours per week in excess of a 40 hour workweek. She was not compensated for the extra hours beyond forty hours that she worked during at least fifty of those forty-hour weeks. The Plaintiff cannot identify all dates exactly, because the Defendants are in possession of computer records showing that Plaintiff was typically at work on her computer during lunch hours.

14. Defendant Fuchs, Smith, Fellabaum and the SSA's violation of the FLSA for failure to pay to Plaintiff overtime compensation at a rate of 1.5 of her hourly pay for all the hours worked in

excess of 40 each week, was willful. All of the Defendants are aware that decision writers were under pressure to produce a great deal of work to reduce the national backlog, and they were aware that decision writers were working off the clock, both nationally and at the SSA OHO office in Albuquerque. All Defendants saw that frequently decision writers arrived early and/or left late, and/or worked through lunch.

15. Further, on or about October 25, 2017, Defendant Stephanie Fuchs, Plaintiff's assigned mentor told her to work through lunch to increase productivity. She did this twice, once as my assigned mentor, and a second time as a supervisor when on or about October 18, 2018, she acknowledged that she knew Plaintiff and others worked through lunch and implied Plaintiff should continue, as my supervisor. Despite her express instruction and acknowledgement that Plaintiff (and others) worked through lunch hours, Defendant Fuchs in or about November, 2018 began to require that Plaintiff check a lunch box on her timesheet to indicate (falsely) that she took lunch. Plaintiff alleges that Defendant Fuchs suddenly became aware that she was exposing herself and the SSA to liability for failure to pay overtime, and was trying to avoid liability by requiring that Plaintiff check a lunch box.

16. All Defendants failed to investigate my complaint of in April, 2019, and instead took adverse action by permitting Defendant Fuchs to try to end Plaintiff's employment. Plaintiff has never been paid for these overtime hours over the course of her employment. These FLSA overtime provision violations were willful, and Plaintiff seeks compensation for all hours worked in excess of 40 and not paid to her, for the length of her employment.

COUNT II

Violations of the Americans with Disabilities Act of 1990, 42 U.S.C. Secs. 12101 to 12213 (ADA)

17. The Plaintiff incorporates and realleges paragraphs 1 through 16 of this Complaint as if fully set forth here.

18. The Plaintiff is disabled within the meaning of the ADA, in that she has osteoarthritis of the hands that is a permanent condition, it is painful and significantly impairs her ability to perform daily activities such as dressing, writing, and typing, and it requires accommodation.

19. Plaintiff was well qualified for the job she held as a decision writer, because she had been an attorney for many years and had worked in administrative law and in medical settings. At SSA OHO, she received excellent reviews for both quality and productivity from her managers and the Judges for whom she drafted decisions. Plaintiff was one of the most productive workers at her worksite, as rated by management's productivity measurement tools.

20. Plaintiff requested a reasonable accommodation in that she informed her supervisor Defendant Stephanie Fuchs of her osteoarthritis and requested that she not be assigned so many of the "typing" heavy decisions. The types of assignments given to decision writers can vary, and some are more "template" based, while others require a great deal of typing because they are more complex or involve multiple impairments or lengthy and/or complex treatments. More often the "unfavorable" decisions, denying claimants benefits, are the assignments that require more typing.

21. Not only did Defendant Fuchs fail to assign work in a way that would accommodate Plaintiff's osteoarthritis, but upon Plaintiff's requests and complaints, Defendant Fuchs retaliated by increasing the type of assignments that would exacerbate Plaintiff's symptoms of pain and swelling.

22. Plaintiff brought this to the attention of Defendants Smith, Fellabaum and the SSA, but no investigation was performed and the aforesaid Defendants, including Defendant Fuchs, retaliated by attempting to push Plaintiff out of her employment.

COUNT III

Violations of the Family and Medical Leave Act of 1993, 29 U.S.C. Secs. 2601 to 2654 (FMLA)

23. The Plaintiff incorporates and re-alleges paragraphs 1 through 22 of this Complaint as if fully set forth here.

24. Plaintiff was an eligible employee as defined pursuant to the Family and Medical Leave Act, 29 U.S.C. Sec. 2611(2)(a)(i)(ii), and entitled to FMLA leave. She had worked at least 1,250 hours for Defendant during the 12 months prior to the events alleged. SSA is an employer covered by the FMLA; it employed in excess of 50 employees within 75 miles of the location where Plaintiff worked between August 2017 and April, 2019.

25. During all times relevant to the Complaint, Plaintiff's daughter suffered from a disabling condition that precluded her ability to safely take a bus to and from school.

26. In or about November or December, 2017, Plaintiff requested intermittent leave to look after a daughter with a disability, by asking for permission to take time outside a flexible window to drive her daughter to and from school, and to make up that time. This leave was granted by both Plaintiff's supervisor at that time, Steven Murphy and the Hearing Office director. Plaintiff used the leave to care for her daughter, and this continued through the time that Defendant Stephanie Fuchs became her new supervisor in or about October, 2018.

27. The Hearing Office Director had confirmed by email that Plaintiff flextime leave had been approved, in or about March, 2018. In or about November, 2018, Defendant Stephanie Fuchs unilaterally and unlawfully removed the leave granted by Plaintiff's prior supervisor and by the Hearing Office Director himself, unbeknownst to Plaintiff, who had continued to use the flextime leave. Defendant Fuchs took adverse action against Plaintiff by attempting to shore up management in a regional office against her for using the leave – falsely representing to management that Plaintiff was using flextime leave without permission. However, the Hearing Office Director, Defendant Fuchs' supervisor, had granted the flextime leave and had never revoked it.

28. Defendant Fuchs then persuaded personnel in the Regional Office to approve Defendant Fuchs' false basis to end Plaintiff's employment. In April, 2019, on learning that Fuchs was attempting to end her employment, Plaintiff complained to Defendants Smith, Fellabaum, Saul and the SSA and requested an investigation. However, these Defendants failed to investigate Plaintiff's complaint regarding Defendant Fuch's actions and false allegations, and instead permitted Fuchs to use Plaintiff's use of leave against her, allowing her to continue to wage a subtle campaign at the Regional level to end her employment. Ultimately, Plaintiff determined that the best course of action was to resign on April 19, 2019, and work on obtaining the requested investigation and resolution of these issues outside of the Agency, rather than continue to suffer Defendant Fuchs' efforts to push her out of the Agency, while the other Defendants did nothing to investigate.

29. Defendant Fuchs' unlawful termination of Plaintiff's FMLA flextime constituted a violation of the FMLA. The use of Plaintiff's FMLA flextime leave against her to try to truncate her employment was a causal connection under the FMLA and constituted retaliation. Defendants Smith, Fellabaum, Saul and the SSA knew of Plaintiff's complaint and could have investigated, but in retaliation for Plaintiff's complaint in April, 2019, they did nothing to investigate or stop Fuchs' actions.

## COUNT IV

### Violations of the ERISA Amendment - COBRA of 1985, 29 U.S.C. Secs. 1161-1168 (COBRA)

30. The Plaintiff incorporates and re-alleges paragraphs 1 through 29 of this Complaint as if fully set forth here.

31. SSA provided a health insurance option to Plaintiff, which she participated in immediately after beginning her employment in August, 2017. This health insurance plan is a qualified plan under ERISA. After leaving the SSA OHO on April 19, 2019 – a qualifying event under the COBRA statute - Plaintiff requested from the regional office human resources officer Melanie Westfield, as well as other personnel in the regional office, that severance material be sent to her to include information about COBRA and Plaintiff's right to maintain her health insurance and life insurance. Plaintiff was entitled to a COBRA notice.

31. Continued health insurance was important to Plaintiff because she had broken her hip in January, 2019, and she was still undergoing physical therapy for it in April, 2019, and she had a number of other chronic health conditions requiring treatment, such as obstructive apnea, Hashimitos's thyroiditis and osteoarthritis.

32. Despite numerous emails and requests to SSA Dallas regional personnel that it be sent, no COBRA notice or any information on how to maintain health insurance was ever sent to Plaintiff.

33. Further, Defendant SSA terminated the Defendant's health insurance benefits in April, 2019, at least one month earlier than it was supposed to, pursuant to the regional human resources personnel Plaintiff spoke to in April and May, 2019.

33. Plaintiff was deprived of health care for her hip, and other conditions, and was also served with health care invoices that Defendant should pay, based on its wrongful and early termination of Plaintiff's health insurance.

34. Defendant SSA violated the notice provisions of COBRA and should be held liable for $110 daily penalties for every day it was late, to date. Defendant Saul/SSA is liable for statutory damages pursuant to 29 U.S.C. § 1132(c)(1)(A) based on its failure to comply with the notification requirements set forth in 29 U.S.C. § 1166(a)(4).

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

35. Plaintiff has filed no other lawsuits in state or federal court dealing with the same facts involved in this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

36. Plaintiff exhausted administrative remedies by following the steps she was advised to take by the Social Security Administration's EEO complaint office. She was emailed a notice of right to sue by SSA, her former employer, on May 26, 2020, which she received on or about May 27, 2020. Pursuant to the Final Agency Decision, Plaintiff had 90 days to file in District Court, and since the filing in this case was on August 24, 2020, this lawsuit is timely.

## REQUEST FOR RELIEF

37. Plaintiff respectfully requests the following relief: All overtime not paid, plus all penalties and fees for the Defendants' willful violation; back pay, front pay, liquidated damages, and compensatory damages for Defendants' violations of the aforesaid statutes.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. Sec. 1746. 18 U.S.C. Sec. 1621.

Executed at U.S. District Court of New Mexico on October 14, 2020.

*Sheila Hurley*

Sheila Hurley

PO Box 25071

Albuquerque, New Mexico 87125

845-663-3029

sheilahurleyesq@gmail.com