FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 1 0 2021

MITCHELL R. ELFERS
CLERK /mn

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHEILA HURLEY,

Plaintiff,

vs.

Case No. 20 CV 00850 JAP/GBW

STEPHANIE A. FUCHS, JEFFREY S. SMITH,
JENNIFER FELLABAUM, ANDREW SAUL as
COMMISSIONER of the SOCIAL SECURITY
ADMINISTRATION, and the SOCIAL SECURITY
ADMINISTRATION.

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS AND
## CROSS-MOTION FOR LEAVE TO AMEND HER COMPLAINT

Plaintiff opposes the Defendants Andrew Saul and the Social Security Administration's ("SSA's") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. Historically, the Courts have disfavored a pre-trial, pre-discovery motion to dismiss, and prefer to resolve legal disputes on the merits. Defendants' FRCP 12(b)(6) motion is designed to deprive the Plaintiff of her day in Court, and a premature dismissal is not in the interests of justice, nor warranted on the law for the reasons set forth below. Plaintiff cross moves for leave to file the attached proposed Second Amended Complaint to resolve any inadequacies; or in the alternative, to permit the Plaintiff 14 days to hire counsel and file a legally sufficient Second Amended Complaint. Defendant-Movants oppose Plaintiff's Cross Motion.

Plaintiff proposes resolution of the Defendant-Movants' Motion to Dismiss as follows:

As to Count I, while Plaintiff does not dispute this Court's lack of jurisdiction for FLSA claims in excess of $10,000 pursuant to the Tucker Act, Plaintiff requests that the Court transfer the Count I claim to the federal Court of Claims, which has jurisdiction of her claims for FLSA violations with damages in excess of $10,000; in the alternative, if the Court determines that such transfer is not legally possible, the Plaintiff will waive her FLSA damages exceeding $10,000 in order to pursue her claims in this Court.

As to Count II, the Plaintiff avers that her allegations claiming discrimination are sufficiently pleaded; however, Plaintiff cross moves pursuant to FRCP Rule 15(a)(2) for leave to amend her Amended

Complaint to provide additional factual details to cure any perceived inadequacies, and to reflect the withdrawal of her Counts III and IV.

Plaintiff agrees to withdraw Counts III and IV of her Amended Complaint, as to all Defendants, Movant and non-Movant; this is reflected in her proposed Second Amended Complaint, attached hereto as Exhibit A.

Should this proposed Second Amended Complaint fall short of the legal pleading requirements, Plaintiff respectfully requests 14 days to retain outside counsel and to file an edited and legally sufficient Second Amended Complaint.

STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009), cert. denied, 130 S. Ct. 1142 (2010). On a motion to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, a plaintiff must furnish "more than labels and conclusions"—"a formulaic recitation of the elements of a cause of action will not do." Id. at 555. There must be something more than "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. See also Twombly, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Plaintiff avers that her First Amended Complaint meets the standards to survive a pre-discovery motion to dismiss, and if it does

not, cross moves the Court to permit the filing of the attached Second Amended Complaint or in the alternative 14 days to file a Complaint fully meeting the Court's expectations for pleading.

## ARGUMENT

### This Court Should Not Dismiss Count I

Plaintiff avers that her claim asserted pursuant to the Fair Labor Standards Act ("FLSA") should not be dismissed, but instead transferred to the federal Court of Claims.

Defendants assert, "because Plaintiff's FLSA claim is "seeking more than $10,000 in damages, jurisdiction is proper only in the Court of Federal Claims under the Tucker Act." However, Plaintiff asserts that the Court should not dismiss Plaintiff's FLSA claim for lack of jurisdiction, but rather should transfer Count I to the federal Court of Claims. Defendants cite Johnson v. Lightfoot, 273 F. Supp. 3d 278, 288 (D.D.C. 2017) stating that the Court dismissed a federal employee's FLSA claim for lack of subject-matter jurisdiction because the amount in controversy exceeded $10,000. The Court in Johnson v. Lightfoot cited numerous cases in which Courts lacking jurisdiction over Plaintiff's claims due to failure to waive damages over $10,000 did not dismiss, but instead transferred the Plaintiff's claims to the federal Court of Federal Claims. See Johnson v. Lightfoot, citing cases: "In light of [plaintiff's] damages [for compensatory and back pay losses, which amounted to more than $10,000], the Court lack[ed] jurisdiction and transfer[red] the EPA claim to the Court of Federal Claims.") (citation omitted); De Leon , 2003 WL 21767504, at *2 (transferring plaintiff's EPA claims to Court of Federal Claims, "the only court in which the claim could have been properly brought"). The Johnson Court's rationale for dismissing the Plaintiff's "EPA" FLSA claim was that Plaintiff failed persistently to respond to the Defendants' motion to dismiss; and the Court dismissed on that basis, without prejudice to refile. The Plaintiff in the instant case has clearly responded to the Defendants motion to dismiss and counters their arguments. Therefore, it is respectfully requested that the FLSA claim be transferred to the Court of Claims; or, and only if the transfer is not legally possible in the Court's view, that the Court accept the Plaintiff's alternative – a waiver of claims over $10,000.

For the purpose of defending this motion, Plaintiff does not dispute the Defendants' calculations as to her salary, hourly rate, and the approximation of unpaid overtime compensation – but Plaintiff avers that Defendants have failed to calculate the additional amounts that she alleges are warranted under the

FLSA penalty provisions. ("Based on Plaintiff's hourly wage of at least $34.67 at the SSA, and her allegation that she worked 250 hours (50 weeks x 5 hours/week) of unpaid overtime for which she was entitled to 1.5 times her hourly wage, her FLSA claim amounts to roughly $13,001.25 (250 hours x $34.67/hour x 1.5), which exceeds the $10,000 limit of this Court's jurisdiction under the Little Tucker Act." Defendants' Motion to Dismiss).

Plaintiff does not dispute the fact that compensation for the hours of overtime due are likely to greatly exceed $10,000, particularly when the penalties for FLSA violations are added. The Plaintiff also does not dispute that the Tucker Act and Little Tucker Act apply to Plaintiff's FLSA claims for unpaid overtime. For the purpose of this motion, Plaintiff does not dispute that the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA, 29 U.S.C. § 216(b)." Abbey v. United States, 745 F.3d 1363, 1369 (Fed. Cir. 2014). The monetary damages provision does allow a plaintiff to bring an FLSA claim "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b) (emphasis added). It is not disputed that whether this Court is one of competent jurisdiction depends on the amount of Plaintiff's FLSA claim and whether it falls under the purview of the Tucker Act or Little Tucker Act. "A plaintiff attempting to invoke the subject matter of the federal district courts bears the burden to establish his or her claim does not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act." Cortez v. E.E.O.C., 585 F. Supp. 2d 1273, 1288 (D.N.M. 2007).

To the extent that the Tucker Act and Little Tucker Act apply to the Plaintiff's FLSA claim for unpaid overtime, Plaintiff respectfully requests that this Court transfer Count I to the federal Court of Claims. Plaintiff states a viable claim, provable with computer records and the testimony of witnesses. In the interest of justice, and as a matter of judicial expediency, it is appropriate to transfer this claim, rather than dismiss it. Because of the time that would be lost between filing of the Complaint in this Court and then having to re-file in the Court of Claims (rather than transfer), dismissal will extinguish some of the Plaintiff's time-limited factual basis for unpaid overtime under the statute, even under the three year "willful violation" provisions, and therefore deprive her of earned compensation and damages. In addition, it would be not be an expeditious use of judicial and court resources to dismiss and require the duplication of efforts by the federal Court of Claims should Plaintiff be required to restart her case in that forum.

Further, the Plaintiff asserts that she is one of many decision writers nationwide who were not paid overtime due while working at the Social Security Administration. If Plaintiff's claims are not resolved pre-trial, she will retain counsel who routinely seeks class certification in factually similar cases. Given that there has been a systemic overtime abuse of decision writers at the SSA, it is appropriate that the case be transferred to the Court of Claims, so that the large class of plaintiffs seeking overtime may seek compensation in a forum which does not limit their claims.

Should this Court find that there is no legally supportable basis to transfer the Count I FLSA claim to the Court of Claims, the Plaintiff requests that in the alternative her claim for overtime be considered waived as to any damages in excess of $10,000 so that this Court may maintain jurisdiction. The Plaintiff's proposed second amended complaint contains a waiver of damages in amounts above $10,000 as an alternative resolution, if the Court finds no sound legal reason to transfer the FLSA claim to the federal Court of Claims.

As to the assertion that the Court should dismiss the individual defendants, Plaintiff avers. The Court should not dismiss the individual defendants. An individual may be liable under the FLSA only if he or she is an "employer," which is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Thus, the plain meaning of the statute itself defines employer for the purposes of the FLSA to include "any person" acting "directly or indirectly" "in the interest" of an employer in relation to an employee, and this would apply to Defendants Stephanie Fuchs and Jeffrey Smith. It is true that the Tenth Circuit has not yet decided whether individual supervisors or managers may be liable under the FLSA. See Anderson v. XTO Energy, Inc., 341 F. Supp. 3d 1272, 1277 (D.N.M. 2018) (noting the absence of "Tenth Circuit law on when an individual supervisor or manager may be considered an employer under the FLSA"). What Defendants fail to mention to this Court, however, is that the Court in Anderson v. XTO Energy Inc. found that the legal ambiguity as to whether individual supervisors or managers may be liable under the FLSA for overtime violations was sufficient to show that this issue should not be resolved summarily. Anderson v. XTO Energy Inc. ("Defendants propose that the court should apply the "economic reality" test under the FLSA to determine whether Defendant Marriott is an employer. Initially, the Court notes that it is unclear whether New Mexico would apply the economic reality test under the FLSA to determine whether a supervisor was an

"employer" under the New Mexico Minimum Wage Act.") Defendants have asserted that the Tenth Circuit applies an "economic reality test" to determine whether an employer-employee relationship exists under the FLSA. See Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436, 1440 (10th Cir. 1998). However, it is not clear that the Tenth Circuit would apply such a test to the exclusion of others, or to supervisors under the facts of this case. Some district courts within the Tenth Circuit have focused on a four part subtest of the economic reality test to determine whether an individual may be liable as an employer under the FLSA, including these four factors: "whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." Guereca v. Cordero, No. 2:19-CV-568-GJF-SMV, — F. Supp. 3d —, 2020 WL 1495299, at *6 (D.N.M. Mar. 27, 2020) (quoting Baker, 137 F.3d at 1440). But see Jensen v. Redcliff Ascent, Inc., No. 2:13-CV-00275-TC-EJF, 2014 WL 2739297, at *2 (D. Utah June 17, 2014) (unreported) (acknowledging that "some districts within the Tenth Circuit have applied other tests" and collecting cases). See also Loyoza v. Allphase Landscape Constr., Inc., in which the Court used an "operational control" test and declined to exercise summary judgment where there was a dispute as to the extent of an individual's authority, and as premature because "no FLSA violations have yet been established." The extent of authority of the individual supervisors can be established only through discovery, and pre-discovery motions to dismiss are not designed to resolve contested pre-discovery factual issues.

Contrary to Defendant-Movants' assertions, Plaintiff's Amended Complaint should not be read as establishing that Ms. Fuchs had no power to fire Plaintiff, rather the allegations should have been read as showing that Ms. Fuchs presented information to others in the office and to regional workers without direct knowledge to gain professional acceptance of her actions, and so that she would not face questions as to why she was micromanaging and trying to "manage out" a top worker in the office. Ms. Fuchs had the power to fire Plaintiff. Discovery will show that Ms. Fuchs used an attorney in the regional office to help her choose bases for termination that would be least likely to be challenged. Further discovery will also establish that when Plaintiff attempted to talk to supervisors and managers to whom Ms. Fuchs directly reported or those above them, she was told that Plaintiff's continued employment was within Ms. Fuch's purview, and Plaintiff would have to talk to Ms. Fuchs only. Discovery will also establish that Ms. Fuchs'

own supervisor stated that Ms. Fuchs had the authority to fire through delegated responsibility. Further, Ms. Fuchs kept employment records on the employees she supervised in local satellite files. This can be shown after discovery, establishing the projects Ms. Fuchs engaged in, and the information she sought and saved electronically and in paper form, in order to support her efforts to have Plaintiff leave the office. Ms. Fuchs also had the power to hire and set rates of pay; however, in the time frame relevant to the complaint, Ms. Fuchs was such a new supervisor that her salary-setting and hiring authority had not been exercised, and so this fact must be established through discovery. Ms. Fuchs' role as supervisor encompasses the power to set rates within a salary range. Although Ms. Fuchs did not hire Plaintiff; predecessor Steven Murphy in the same role had the ability to hire and set a salary within a range. He hired Plaintiff and also granted the pay rate Plaintiff requested, because the original rate was set too low for Plaintiff to feasibly move across the country with her daughter and all belongings, to take the job in Albuquerque. There may be a rubber stamp process to approve a group supervisor's actions in hiring and firing, and Defendants will no doubt assert that such a process would remove from her the authority to hire and fire. However, the factual details of this issue are contested, complex and multifaceted, and must be established through discovery. They cannot be determined in a contested pre-discovery motion to dismiss.

As to Jeffrey Smith, as the Hearing Office Director, he also had the power to hire, fire, set salaries within a range, and keep personnel records. Whether he exercised this power directly or indirectly routinely or specifically in this case can be shown after discovery; however Mr. Smith certainly had those powers, delegated or otherwise. He was the top manager in the OHO office in Plaintiff's reporting line.

Further, it should be noted that both Ms. Fuchs and Mr. Smith were absolutely aware that SSA employees work "off the clock" both locally and nationally. Mr. Smith made a comment on one occasion in which an employee at a meeting talked about working after hours – Mr. Smith stated ruefully, in sum and substance "oh, I'm suffering my employees to work" off the clock. Plaintiff has a distinct memory of Mr. Smith using the word "suffering" which is a term of art in terms of the FLSA, wherein an issue is whether a defendant "suffered" or "permitted" employees to work. In other incidents, Ms. Fuchs made improper demands that Plaintiff check her timesheet as if she had taken lunch, while knowing that Plaintiff was working through lunch because she had told her to do so and because on several subsequent occasions Plaintiff had told Ms. Fuchs that she was still working through lunch. Ms. Fuchs' demand that the "lunch

taken" box be checked on the Plaintiff's electronic timesheet was intended to further Ms. Fuchs' fiction that Plaintiff was not working off the clock in violation of the FLSA – when Ms. Fuchs knew she was. Ms. Fuchs was clear that Plaintiff was working through lunch, yet sought to hide this fact by demanding that she check the "lunch taken" box on her timesheet as if she had taken a lunch rather than worked through it. Additionally, the issue of employees working off the clock was well known nationally, and a Union issue. Former supervisor Steven Murphy told the Plaintiff that the issue of working off the clock and not getting paid for it (FLSA overtime violations) was a ticking time bomb that was discussed by upper management. Defendants' knowledge and encouragement that Plaintiff work off the clock supports Plaintiff's contention that she is entitled to the 3-year statute of limitations that applies to willful FLSA violations, as opposed to the 2-year statute of limitations that applies ordinarily. See 29 U.S.C. § 255(a); see also Brinkman v. Dep't of Corrections, 21 F.3d 370, 372 (10th Cir.1994) as well as all available penalties as damages.

The Plaintiff withdraws allegations against the individual defendant Jennifer Fellabaum as to the FLSA claim, because she is not known to have any of the aforesaid four part subtest authorities, nor operational control, nor other indicia of involvement or control over the FLSA violations. This claim against her is respectfully withdrawn with Plaintiff's request that such withdrawal be without prejudice to be re-asserted subsequent to receipt of contrary information or information obtained during discovery.

In contrast to Ms. Fellabaum, Ms. Fuchs and Mr. Smith were personally involved with, or their roles were personally capable of, making decisions that would determine Plaintiff's pay structure. See Hunter v. Agility Energy, Inc., 419 F. Supp. 3d 1269, 1275-77 (D. Utah 2019) (dismissing individual defendants where the complaint failed to allege that they were "personally involved in making decisions that would determine Plaintiff's pay structure," but refusing to dismiss claim against supervisor where the complaint sufficiently alleged that he had power "to hire and fire employees" and "supervision or control over the employees' conditions of employment and rate and method of pay"). It should also be noted that no one single criterion under the four part subtest is determinative. Guereca, 2020 WL 1495299, at *7 (denying motion to dismiss where "Plaintiff ha[d] factually alleged two of the four factors identified in Baker," i.e., that the defendants had the power to hire and fire and determine the rate of payment).

Defendants are attempting to try the facts of this case in this pre-discovery motion; however, the issues are too complex to be resolved summarily. This Court has already screened Plaintiff's complaint once and did not dismiss it after Plaintiff amended it. To the extent that this Court determines that additional factual allegations are critical to avoid dismissal, Plaintiff has attached a proposed second amended complaint that includes the factual allegations that Defendant-Movants have asserted are necessary to avoid dismissal. To the extent that the Court deems other allegations necessary, the Plaintiff respectfully requests an additional 14 days to hire counsel to file a second amended complaint to provide detail required by the Court.

This Court Should Not Dismiss Count II

Plaintiff avers that her disability-related claims, asserting failure to reasonably accommodate and retaliation, and arising under the Rehabilitation Act ("FLSA"), should not be dismissed.

Plaintiff does not dispute that the Court should construe her second claim as arising under the Rehabilitation Act. See, e.g., Padilla v. Mnuchin, No. 20-1177, 2020 WL 6947803, at *1 n.1 (10th Cir. Nov. 25, 2020) (federal employees with disability related claims are excluded from coverage under the ADA and their "exclusive remedy is under the Rehabilitation Act"). Employment discrimination claims under the Rehabilitation Act incorporate the "standards applied under Title I of the Americans with Disabilities Act," 29 U.S.C. § 794(d), "[c]ases decided under section 504 of the Rehabilitation Act are therefore applicable to cases brought under the ADA and vice versa, except to the extent the ADA expressly states otherwise." Woodman v. Runyon, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997).

As a general matter, Plaintiff also does not dispute that: "[I]n a suit under Title VII or the Rehabilitation Act against the United States, only the head of the federal agency or department sued is a proper defendant." Hare v. Donahoe, No. 13-CV-508-JED-FHM, 2014 WL 4793346, at *2 (N.D. Okla. Sept. 25, 2014), aff'd, 608 F. App'x 627 (10th Cir. 2015). Therefore, Plaintiff agrees to withdraw her claims under this Count II as to the individual Defendants, both Movant and Non-Movant.

As to Count II against the Defendant-Movants, Plaintiff avers that she has properly alleged all the elements of her disability discrimination and retaliation claims.

Plaintiff has not failed to state a claim for failure to accommodate a disability. Plaintiff does not dispute that "[t]o state an ADA failure to accommodate claim, a plaintiff must allege that "(1) [she] is

disabled; (2) [she] is otherwise qualified; and (3) [she] requested a plausibly reasonable accommodation." With respect to this motion, Defendants do not dispute the first prong: that Plaintiff's osteoarthritis constitutes a disability within the meaning of the Rehabilitation Act. With respect to the second prong, the allegations in the Amended Complaint are clear that Plaintiff was "otherwise qualified" and that she "requested a plausibly reasonable accommodation." (See Amended Complaint, paragraphs _____).

Under the Tenth Circuit's two-step process for determining whether a federal employee is "otherwise qualified" under the Rehabilitation Act, the Plaintiff's claims should survive. First, Plaintiff has alleged, and Defendants do not dispute, that Plaintiff was capable of performing her work at a high level, with a high degree of judicial approval and low levels of remands. Plaintiff also alleged that she could not perform the essential functions of the job without an accommodation in that she alleged that to perform her work, she typed at an injurious rate and suffered pain and injury – pain and swelling and increased damage to her osteoarthritic hands. Second, Plaintiff alleged that there are reasonable accommodations that could have been implemented to enable her to perform those essential functions, including an accommodation to be permitted to use her skillset in a different mode, producing less complex but more of the simpler decisions. The Plaintiff did not request work that would result in harder work being performed by her coworkers. These are false assumptions and assertions by the Defendant-Movants. Rather, Plaintiff requested work that was simply different in being less complex, but accommodating in that it would require less typing and did not hurt and damage her hands as much. Plaintiff did not state she would perform less of this work, and indeed could have performed more of it than her colleagues, to offset any perceived inequitable accommodation. Clearly, producing decisions for the Judges of the SSA was an essential function of the job. However, the types of decisions produced by decision writers varied greatly in terms of output expectations and the amount of typing required. It is undisputed that the SSA OHO policies and productivity indices require production of MORE of the less complex decisions to meet productivity standards. Assignment of these less complex decisions does not necessarily require harder work on the part of those completing complex decisions, who are given more time. To resolve the issue as to whether assignments of less complex decisions would shift harder work to colleagues requires facts put before this Court, which are not currently before this Court. This issue can only be addressed after

discovery. The impact of certain types of assignments was injurious to Plaintiff, but a detailed understanding of decision writing process, assignments, and modes of evaluation requires explication.

Typing all of her assigned decisions at a rapid pace, particularly given Ms. Fuchs' increased level of retaliatory assignments, was not possible for the Plaintiff without further injuring her hands. Plaintiff required additional time and sustained injury to meet the SSA standards, without an accommodation. To permit the Plaintiff to perform work that necessitated less typing, and instead permitted her to use autotext more frequently, could certainly be a reasonable accommodation if she were to produce more of the shorter decisions. In this way, she would not be "shifting" harder work to her colleagues. This accommodation would not require other employees to work harder – it would have required them to work differently. Thus, Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1121 (10th Cir. 2004) is not on point, and neither is Bolstein v. Reich, No. CIV. A. 93-1092, 1995 WL 46387, at *4 (D.D.C. Jan. 19, 1995), aff'd, No. 95-5029, 1995 WL 686236 (D.C. Cir. Oct. 4, 1995).

The issue of the "reasonableness" of this accommodation cannot be established on a pre-discovery motion to dismiss and requires that certain facts be established through discovery.

Further, to the extent that this Court determines that additional factual detail is necessary to survive Defendants' motion to dismiss, Plaintiff respectfully requests that the Court grant her cross motion for leave to file the Second Amended Complaint. In Plaintiff's proposed Second Amended Complaint, she does allege that her osteoarthritis rendered her unable to perform the essential functions of her job. She alleges that she was unable to perform these essential functions without accommodation, and instead performed work off the clock to accommodate for the lack of speed with which she had to operate, and due to the pain and injury to her hands with excessive typing.

In the proposed Second Amended Complaint, the Plaintiff alleges that reasonable accommodations would have included: Installation of the Dragon software application and any necessary associated equipment and permitted use of the Dragon application or a similar application or device. The Dragon software application is, upon information and belief, a computer application whereby a worker speaks into a computer microphone to perform certain tasks. This Dragon software application was never offered to Plaintiff, and Plaintiff did not know it existed. Another accommodation would have been to grant Plaintiff the ability to use accruing sick time for longer breaks between typing-heavy assignments.

A third accommodation would be the aforesaid change in the types of assignments to permit Plaintiff to produce more of the less complex work than produced by some of her colleagues, which would have been a fair and reasonable accommodation when coupled with the production policy requirement that more of this type of decision be produced. The less complex work could be performed with less typing, because autotext could be used. Notwithstanding that more of this simple work is required to meet productivity standards, there is less typing involved even at required higher production rates. Plaintiff adamantly denies that she was seeking to avoid work. As her record at the SSA shows, she did more work than most of her colleagues, even if it meant she had to work through lunch and suffer pain and swelling to her hands.

Finally, Plaintiff respectfully asserts that Defendants' assertions and legal citations are based on factually incorrect assumptions. The decision writers at SSA OHO in Albuquerque were already subject to an inequitable work distribution at the discretion and whim of the supervisor Stephanie Fuchs, that was exacerbated in Plaintiff's case. Although all decision writers are paid on the same wage/salary range, some of the decision writers are attorneys and some are not. They all have the same job description. Ms. Fuchs inequitably assigned less complex work to decision writers who were not attorneys whom she favored, yet they were paid on the same scale and were required to perform the same work as the attorneys, who did perform more complex and typing heavy work. There was no need to do this, because the type of work performed did not require an attorney's license, and could be performed by paralegals. Any citation to a case in which Plaintiff would be unfairly characterized as seeking job duties that did not reflect the expectations of her as a G-12, are not on point. Most of the non-attorney decision writers under Ms. Fuchs' supervision received less complex cases, capable of being completed with less typing, and they were paid on the same scale as the attorneys assigned the very complex cases although they did not have disabling osteoarthritis. Thus, even if work assignments to accommodate Plaintiff's osteoarthritis would result in her being assigned less complex cases, no automatic inference should be made that the work distribution would be inequitable. Further, any notion that assignment of simpler cases requiring less typing to Plaintiff as an accommodation would result in undue burden on others, could be offset by requiring more of those less complex decisions.

Therefore it is respectfully alleged that Plaintiff's allegations meet the standards set forth in Woodman v. 10 Runyon, 132 F.3d 1330, 1339 (10th Cir. 1997) in both the Amended Complaint and the proposed Second Amended Complaint, which contains the additional factual details set forth above.

Plaintiff has also stated a claim for retaliation, and requests that this claim survive a pre-discovery motion to dismiss. Plaintiff has alleged that instead of accommodating her disability, her supervisor "retaliated by increasing the type of assignments that would exacerbate Plaintiff's symptoms of pain and swelling." Doc. 6 ¶ 21. Plaintiff has further alleged that when she complained about Ms. Fuchs, Defendants "retaliated by attempting to push Plaintiff out of her employment." Id. ¶ 22. Ms. Fuchs burdened Plaintiff with more complex and typing-heavy assignments than her co-workers. Plaintiff was forced to injure herself to keep up with Ms. Fuchs' retaliatory assignments. Further, because the Defendants did not bother to engage the Plaintiff in a discussion of what would be a workable and fair accommodation, alternatives were not explored.

Plaintiff does not dispute that the elements of a prima facie retaliation claim under the Rehabilitation Act are 1) the plaintiff engaged in protected activity; 2) the plaintiff suffered a materially adverse employment action; and 3) there exists a causal connection between the two. See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010). Plaintiff notes that Defendants have assumed arguendo that the first two elements were plead, but assert that Plaintiff has failed to allege a plausible connection between her request for accommodation and complaints about lack of accommodation with any materially adverse employment action. Defendants have acknowledged that temporal proximity between the protected activity and retaliatory conduct establishes a plausible connection between the accommodation request and retaliatory activity.

Plaintiff alleges that the Amended Complaint plausibly alleges a temporal causal connection between her complaints and the retaliatory actions engaged in by Defendant Ms. Fuchs. The time frame and connection between complaints and retaliatory activity can be inferred by the very short period in which Plaintiff performed at SSA with Ms. Fuchs as her supervisor. To the extent that the Court deems the Plaintiff's allegations as insufficiently detailed in the Amended Complaint, the Plaintiff respectfully requests that the Court grant her cross-motion for leave to amend the complaint and to file the attached Second Amended Complaint, which the temporal connection is made more clear. In the alternative, if the

Court does not accept the proposed attached Second Amended Complaint to resolve any inadequacies, the Plaintiff requests that she be afforded 14 days to hire counsel to file a Second Amended Complaint.

Plaintiff Withdraws Counts III and IV

As to Count III, the Plaintiff acknowledges that the Court lacks subject matter jurisdiction under the Family and Medical Leave Act ("FMLA") and withdraws this Count from her proposed Second Amended Complaint as to all Defendants. Further, as to Count IV, the Plaintiff acknowledges that Employee Retirement Income Security Act ("ERISA") or its amendment, the Consolidated Omnibus Budge Reconciliation Act ("COBRA"), do not apply to federal government health plans, and she withdraws this Count from her proposed Second Amended Complaint.

Plaintiff withdraws her claims for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. Secs. 2601 to 2654 (FMLA). The Plaintiff reluctantly concedes that the Defendant-Movants are correct in their assertion that Title II of the FMLA provides no private right of action, and so Plaintiff withdraws this claim as to all Movant and Non-Movant Defendants. In acknowledging this, and withdrawing the FMLA claim, the Plaintiff is left with no legal recourse to seek justice and compensation with respect to the SSA's failure to properly observe the FMLA, which supposedly covered the Plaintiff and her need for a very minor accommodation to care for child with disabling conditions. The Defendant-Movants assert that the proper procedure for a Title II employee with a grievance concerning extended leave is to bring a claim before the [Merit Systems Protection Board], not a federal district court." Berry v. F.A.A., No. 05 CV 00779 WYD CBS, 2006 WL 446080, at *2 (D. Colo. Feb. 21, 2006). This case is inapposite, because Plaintiff was on an anticipated two year contract and the terms of her contract precluded bringing a claim before the Merit Systems Protection Board. Thus, Plaintiff is left with no recourse to compensate her for SSA's providing her with an FMLA accommodation to "flextime" later in the date to transport and care for a daughter with disabling conditions, and then citing the use of that very accommodation as a basis to severely discipline her. Further, Defendant Fuchs' silent revocation of that accommodation would have been overturned by Defendant Smith, by his own sworn admission, had he been given any knowledge of what Ms. Fuchs was doing prior to her doing it.

Finally, the Plaintiff withdraws Count IV, her claims sounding in violations of the ERISA Amendment - COBRA of 1985, 29 U.S.C. Secs. 1161-1168 (COBRA) as to all Defendants, Movant and

Non-Movant, in recognition of the fact that, as asserted by the United States Attorney, again a federal employee has no legal recourse for unfair and damaging treatment by the SSA, an agency of the federal government.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should not dismiss the Plaintiff's First Amended Complaint in its entirety. The Plaintiff requests that the Court grant Plaintiff's Cross-Motion for Leave to Amend the Amended Complaint, and permit Plaintiff to file the proposed Second Amended Complaint, attached hereto, or in the alternative for an additional 14 days to correct any remaining inadequacies in the allegations. The attached proposed Second Amended Complaint contains additional allegations to cure any inadequacies in the Amended Complaint that is the subject of Defendant's motion to dismiss, and shows that Plaintiff has withdrawn two of her claims. The Plaintiff also requests that the Court grant her request to transfer her FLSA claims to the federal Court of Claims, or, if the Court has determined there is no legal basis to do so, in the alternative to accept the Plaintiff's waiver of damages over $10,000. The Plaintiff requests any and all such further relief as the Court may deem just and proper.

Respectfully submitted,

SHEILA HURLEY
Plaintiff, Pro Se
P.O. Box 25170
Albuquerque, New Mexico 87125
(845) 663-3029
sheilahurleyesq@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2021, I filed the foregoing pleading electronically through the Federal Court District of New Mexico which caused it to be filed in the CM/ECF system and which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

_____ February 10, 2021

SHEILA HURLEY
Plaintiff, Pro Se

PO Box 25071
Albuquerque, New Mexico  87125
845-663-3029
sheilahurleyesq@gmail.com

UNITED STATES DISTRICT COURT
FOR THJE DISTRICT OF NEW MEXICO

SHEILA HURLEY,

      Plaintiff,

                                 Case No. 20 CV 00850  JAP/GBW

vs.

STEPHANIE A. FUCHS, JEFFREY S. SMITH,
ANDREW SAUL as ACTING COMMISSIONER
of the SOCIAL SECURITY ADMINISTRATION,
and the SOCIAL SECURITY ADMINISTRATION.

## SECOND AMENDED COMPLAINT

JURISDICTION and THE PARTIES

      1.    Plaintiff Sheila Hurley is a citizen of New Mexico who presently resides at PO Box 25071, Albuquerque, NM 87125.  Between August 6, 2017 and April 19, 2019, Plaintiff was an employee of the Social Security Administration, working as a decision writer at its Office of Hearing Operations (OHO) in Albuquerque, New Mexico.  While living in New York, Plaintiff was recruited to work in the Albuquerque, New Mexico OHO by a former supervisor, Steven Murphy.  At all times relevant to the matters herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA, otherwise qualified to perform her role as a decision writer for the Social Security Administration, but needing a reasonable accommodation.  She was the sole caretaker for her daughter, who also has a disability.

      2.    Defendant Stephanie Fuchs is a citizen of Albuquerque, New Mexico, and is employed as a Group Supervisor of the Social Security Administration's ("SSA" or the "Agency") Office of Hearing Operations ("OHO") on Broadway Boulevard in Albuquerque, New Mexico.  At the time the claims alleged in this complaint arose, Defendant Fuchs was acting under color of state law, as a federal employee of the SSA, and mentor and supervisor over the Plaintiff when she was employed in the Albuquerque OHO office.  As set forth infra, she had the power to hire, fire, maintain personnel records and set rates of pay within a range.  Ms. Fuchs is sued in her individual capacity as to Count I.

      3.    Defendant Jeffrey S. Smith is a citizen of Tijeras, New Mexico, and is employed as the Hearing Office Director for the SSA's Office of Hearings Operations in Albuquerque, New Mexico.  At the time the claims alleged in this compliant arose, Defendant Smith was acting under color of state law, as a federal employee and supervisor over all administrative staff in the Albuqueruque OHO office,

including Defendant Stephanie Fuchs. As set forth infra, Mr. Smith had the power to hire, fire, maintain personnel records and set rates of pay within a range. Mr. Smith is sued in his individual capacity as to Count I.

4.     Defendant Andrew Saul is the Acting Commissioner of the Social Security Administration, located at 6401 Security Boulevard, Baltimore, Maryland 21235, and at times relevant to the Complaint, was its appointed Commissioner.     Defendant Saul is sued in his official capacity as to Counts I and II.

5.     The Social Security Administration was created by Congress in 1935 to administer America's social security programs, and provide benefits to qualified retired and disabled workers and their dependents, and to survivors of insured workers. At all pertinent times, the Agency was, is and has been an employer engaged in an industry affecting commerce with 50 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and meets the definition of "employer" set forth in the FLSA and Rehabilitation Act. At all times, the Social Security Administration has been a covered entity under the Rehabilitation Act and the SSA was the employer of the Plaintiff within the meaning of the FLSA and Rehabilitation Act for all time periods relevant to the Complaint.

6.     Jurisdiction is involved pursuant to Sections 1331 and 1343 of Title 28, 28 U.S.C. Sec. 1353(3), 42 U.S.C. Sec. 1983 and this Court would have supplemental jurisdiction over claims arising under the laws of the State of New Mexico, such as wage and hour claims. The unlawful employment practices complained of occurred in this District, and venue is proper.

A. NATURE OF THE CASE

7.     This is an action under the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, the Fair Labor Standards Act of 1938 ("FLSA") and under the law of the State of New Mexico for monetary damages due to unlawful employment practices by the Defendants.

8.     Plaintiff Hurley was a hard working and competent decision writer employee of the SSA, with excellent reviews by her managers and the Judges for whom she wrote decisions, between August 6, 2017 and April 19, 2019.

9.     The Defendants Stephanie Fuchs, Jeffrey Smith, Andrew Saul and the Social Security Administration violated Plaintiff's rights under the FLSA and New Mexico Wage and Hour laws by, inter

alia, suffering, permitting and/or instructing her to work through lunch hours and by failing to pay her for those hours throughout her employment from August 6, 2017 through April 19, 2019.

10.    The Defendants' actions were willful.  Defendant Stephanie Fuchs informed Plaintiff that she must indicate on time sheets that she was taking lunch, despite having previously instructed Plaintiff to work through lunch, and knowing that Plaintiff was working through lunch.

11.    It was well known by SSA management and by all the Defendants that Plaintiff and many other decision writers worked through lunch and during other "off the clock" hours and were not compensated for that work, despite being non-exempt workers who were covered by the overtime provisions of the FLSA.

12.    Plaintiff also alleges that Defendants Andrew Saul and the SSA violated Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, which prohibits discrimination on the basis of disability in federal employment.  These Defendants discriminated against Plaintiff in violation of the Rehabilitation Act by failing to accommodate Plaintiff's disabling osteoarthritis of the hands.  Defendants, by the action of supervisor Stephanie Fuchs, also retaliated against Plaintiff for complaining about adverse work assignments, by taking adverse action and increasing Plaintiff's workload.

13.    These adverse actions consisted of failing to accommodate Plaintiff's disabling osteoarthritis condition; increasing the types of assignments that exacerbated the symptoms of Plaintiff's disabling osteoarthritis condition; providing Plaintiff with terms and conditions of employment different from those of similar employees; and retaliating against Plaintiff by attempting to end her employment.

<u>CAUSES OF ACTION</u>

14.    Plaintiff alleges that the following of her constitutional rights, privileges or immunities have been violated and that the following facts form the basis for her allegations.

COUNT I

<u>Violations of the Fair Labor Standards Act of 1938 (FLSA)</u>

15.    The Plaintiff incorporates and re-alleges paragraphs 1 through 14 of this Complaint as if fully set forth here.

16.    The Plaintiff was a non-exempt worker at the SSA OHO, as are all decision writers.

17.     The SSA is an employer under the provisions of the FLSA, and subject to its overtime compensation provisions. Stephanie Fuchs and Jeffrey Smith are both employers under the FLSA. They have the power to hire, fire, maintain personnel records and set rates of pay. Both Ms. Fuchs and Mr. Smith maintain personnel records in their offices and electronically, in the form of projects, evaluations, disciplinary notes, attendance and in other ways; and rates of pay are set within an organizational range by the Hearing Office Director, Mr. Smith and by delegated authority by Ms. Fuchs. Mr. Smith and Plaintiff's previous supervisor, Steven Murphy, hired the Plaintiff into her role at SSA in April, 2017, and set her rate of pay. Ms. Fuchs is now in Mr. Murphy's role and although new, would be able to exercise the same authority.

18.     The Plaintiff typically worked a daytime shift, in excess of 40 hours per week throughout her employment at SSA OHO, between August 6, 2017 and April 19, 2019. She typically worked during all lunch hours, so that she would typically work at least five hours per week in excess of a 40 hour workweek. She was not compensated for the extra hours beyond forty hours that she worked during at least fifty of those forty-hour weeks. The Plaintiff cannot identify all dates exactly, because the Defendants are in possession of computer records showing that Plaintiff was typically at work on her computer during lunch hours.

19.     Plaintiff earned an hourly wage of at least $34.67 at the SSA, and she worked at least 250 hours (50 weeks x 5 hours/week) of unpaid overtime for which she was entitled to 1.5 times her hourly wage as a non-exempt worker.

20.     Plaintiff's FLSA claim amounts to at least $13,001.25 (250 hours x $34.67/hour x 1.5), and considerably more when double back pay liquidated monetary damages are factored.

21.     Defendant Fuchs, Smith, Saul and the SSA's violation of the FLSA for failure to pay to Plaintiff overtime compensation at a rate of 1.5 of her hourly pay for all the hours worked in excess of 40 each week, was willful. All of the Defendants are aware that decision writers were under pressure to produce a great deal of work to reduce the national backlog, and they were aware that decision writers were working off the clock, both nationally and at the SSA OHO office in Albuquerque. All Defendants saw that frequently decision writers arrived early and/or left late, and/or worked through lunch.

22.     On or about October 25, 2017, Defendant Stephanie Fuchs, Plaintiff's assigned mentor at that time, told her to work through lunch to increase productivity. Defendant Fuchs did this twice, once as Plaintiff's assigned mentor, and a second time as a supervisor when on or about October 18, 2018, Defendant Fuchs acknowledged to Plaintiff that she knew Plaintiff and others worked through lunch and implied Plaintiff should continue, as Plaintiff's supervisor.

23.     Despite her express instruction and acknowledgement that Plaintiff (and others) worked through lunch hours, in or about November, 2018, the new supervisor Defendant Fuchs began to require that Plaintiff check a "lunch taken" box on her timesheet to indicate (falsely) that Plaintiff took lunch. Plaintiff alleges that Defendant Fuchs had become aware that she was exposing herself and the SSA to liability for failure to pay overtime, and was trying to avoid liability by requiring that Plaintiff check a "lunch taken" box on her timesheet.

24.     Both Ms. Fuchs and Mr. Smith were absolutely aware that SSA employees work "off the clock" both locally and nationally. Mr. Smith made a comment on one occasion in 2018, in which an employee at a meeting talked about working after hours – Mr. Smith stated ruefully, in sum and substance "oh, I'm suffering my employees to work" off the clock. Plaintiff has a distinct memory of Mr. Smith using the word "suffering" which is a term of art in terms of the FLSA, wherein an issue is whether a defendant "suffered" or "permitted" employees to work.

25.     All Defendants failed to investigate Plaintiff's complaint in April, 2019, and instead took adverse action by permitting Defendant Fuchs to try to end Plaintiff's employment beginning in or about December 18, 2018 through the date of Plaintiff's resignation on April 19, 2019.

26.     Plaintiff has never been paid for these overtime hours over the course of her employment. These FLSA overtime provision violations were willful, and Plaintiff seeks compensation for all hours worked in excess of 40 and not paid to her, for the length of her employment, plus all penalties due based on the Defendants' willful violations.

27.     To the extent that the Tucker Act and Little Tucker Act apply to the Plaintiff's FLSA claim for unpaid overtime, and this Court lacks subject matter jurisdiction, Plaintiff respectfully requests that this Court transfer Count I to the federal Court of Claims. Plaintiff states a viable claim, provable with computer records and the testimony of witnesses.

28.    Further, Plaintiff asserts that she is one of many decision writers nationwide who were not paid overtime due while working at the Social Security Administration.  The issue of employees working off the clock was well known nationally, and a Union issue.   Former supervisor Steven Murphy told the Plaintiff that the issue of working off the clock and not getting paid for it (FLSA overtime violations) was a ticking time bomb that was discussed by upper management.  Defendants' knowledge and encouragement that Plaintiff work off the clock supports Plaintiff's contention that she is entitled to the 3-year statute of limitations that applies to willful FLSA violations, as opposed to the 2-year statute of limitations that applies ordinarily.

29.    Given that there has been a systemic overtime abuse of decision writers at the SSA, it is appropriate in the interest of justice that the case be transferred to the Court of Claims, so that a large class of plaintiffs seeking overtime may seek compensation in a forum which does not limit their claims.

COUNT II

Violations of the Rehabilitation Act as Amended, for Failure to Accommodate, and Retaliation

30.    The Plaintiff incorporates and re-alleges paragraphs 1 through 29 of this Second Amended Complaint as if fully set forth herein.

31.    The Plaintiff is disabled within the meaning of the ADA, in that she has osteoarthritis of the hands that is a permanent condition, it is painful and significantly impairs her ability to perform daily activities such as dressing, writing, and typing, and it requires accommodation.

32.    Plaintiff was well qualified for the job she held as a decision writer, because she had been an attorney for many years and had worked in administrative law and in medical settings.   For the purposes of the Rehabilitation Act, as amended, the Plaintiff was "otherwise qualified."   She was capable of performing her role competently at SSA OHO, and she received excellent reviews for both quality and productivity from her managers and the Judges for whom she drafted decisions.   Plaintiff was one of the most productive workers at her worksite, as rated by management's productivity measurement tools.

33.    However, Plaintiff's competence and good reviews came at the cost of working off the clock to provide herself time to type the factually dense decisions she was assigned; and it came at the cost of working through pain and swelling of her osteoarthritic hands, as well as further injury to her hands.

Plaintiff needed a reasonable accommodation to perform the essential functions of her position without pain, swelling and working off the clock.

34.    Plaintiff requested a reasonably plausible accommodation in that she informed her supervisor Defendant Stephanie Fuchs of her osteoarthritis and requested that she not be assigned so many of the "typing" heavy decisions.   The types of assignments given to decision writers can vary, and some are more "template" based, while others require a great deal of typing because they are more complex or involve multiple impairments or lengthy and/or complex treatments.   More often the "unfavorable" decisions, denying claimants benefits, are the assignments that require more typing.   Because of the need for a great deal of typing and their factual density, decision writers are afforded more time by the SSA productivity index to complete the decisions.

35.    The request for less typing intensive assignments was plausible, reasonable and would have accommodated the Plaintiff.   This reasonable accommodation would not have reduced the Plaintiff's workload, because the shorter, less typing heavy assignments were allotted less time to complete by productivity standards, and Plaintiff would have to produce more of them.   However, in sum, they would not have required as much typing as the longer assignments which were not required, even though fewer longer assignments had to be produced to meet standards.

36.    Other reasonable accommodations would have permitted the Plaintiff to adequately perform her role without pain, swelling and working off the clock.   For example, installation of the Dragon software application and any necessary associated equipment and permitted use of the Dragon application or a similar application or device would have constituted a satisfactory and reasonable accommodation. The Dragon software application is, upon information and belief, a computer application whereby a worker speaks into a computer microphone to perform certain tasks.   This Dragon software application was never offered to Plaintiff, and Plaintiff did not know it existed.   Another accommodation would have been to grant Plaintiff the ability to use accruing sick time for longer breaks between typing-heavy assignments.

37.    Not only did Defendant Fuchs fail to assign work in a way that would accommodate Plaintiff's osteoarthritis, but upon Plaintiff's requests and complaints, Defendant Fuchs retaliated by increasing the type of assignments that would exacerbate Plaintiff's symptoms of pain and swelling.

38.     Plaintiff brought this to the attention of Defendants Smith, and the SSA, but no investigation was performed and the aforesaid Defendants, including Defendant Stephanie Fuchs, retaliated by attempting to push Plaintiff out of her employment.   .

39.     The temporal proximity of Plaintiff's complaints about her osteoarthritis and requests for reasonable accommodation in or about November and December, 2018, to Defendant Fuchs' accelerated attempts to push Plaintiff out of her employment show a causal connection.     Almost immediately upon Plaintiff's complaints and requests for accommodation in late 2018, Defendant Fuchs put into place her plan to manage Plaintiff out of the office.     Beginning in or about November and December, 2018, Defendant Fuchs contacted regional and began documenting and proposing assorted fictive issues to find support for her decision to push Plaintiff out of the office.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

40.     Plaintiff has filed no other lawsuits in state or federal court dealing with the same facts involved in this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41.     Plaintiff exhausted administrative remedies by following the steps she was advised to take by the Social Security Administration's EEO complaint office.  She was emailed a notice of right to sue by SSA, her former employer, on May 26, 2020, which she received on or about May 27, 2020. Pursuant to the Final Agency Decision, Plaintiff had 90 days to file in District Court, and since the filing of the first Complaint in this case was on August 24, 2020, this lawsuit is timely.

## REQUEST FOR RELIEF

42.     Plaintiff respectfully requests the following relief:  All overtime not paid, plus all penalties and fees for the Defendants' willful violation pursuant to the penalty provisions of the relevant statutes; back pay, front pay, liquidated damages, and compensatory damages for Defendants' violations of the aforesaid statutes. The Plaintiff also requests such further relief as the Court deems just and proper.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. Sec. 1746.  18 U.S.C. Sec. 1621.

Executed at U.S. District Court of New Mexico on February 10, 2021.

Sheila Hurley
PO Box 25071
Albuquerque, New Mexico  87125
845-663-3029
sheilahurleyesq@gmail.com

20 CV 850 JAP/GBW

Respectfully Submitted
by Plaintiff for filing
on 2/10/21

thankyou!