IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHEILA HURLEY,

      Plaintiff,

vs.                                  Civ. No. 20-850 KG/GBW

STEPHANIE A. FUCHS, JEFFREY S. SMITH,
JENNIFER FELLABAUM, ANDREW SAUL,
Commissioner of the SOCIAL SECURITY
ADMINISTRATION, and THE SOCIAL
SECURITY ADMINISTRATION,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This is an employment lawsuit filed by a decision writer employed by Defendant Social

Security Administration (SSA) from August 2017 to April 2019. *Pro se* Plaintiff[1] worked at the

SSA Office of Hearing Operations (OHO) in Albuquerque, New Mexico. On January 13, 2021,

Defendants Andrew Saul, Commissioner of the Social Security Administration, and the SSA

(collectively, Defendants) filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and

Failure to State a Claim (Motion to Dismiss). (Doc. 9). In her response, Plaintiff moves, in the

alternative, to file a proposed Second Amended Complaint (attached to her response) or to have

14 days to retain counsel who will file a legally sufficient Second Amended Complaint. (Doc.

16) at 2. The Motion to Dismiss is fully and timely briefed. *See* (Docs. 13, 16, 17, and 18).

---

[1] The Court notes that Plaintiff is a licensed attorney. *See* https://www.sbnm.org/For-Public/I-
Need-a-Lawyer/Online-Bar-Directory/Lawyer-Info/customercd/153353 (accessed Aug. 2, 2021);
*see also Thurlo v. Guiding Star LLC*, 2012 WL 13076565, at *3 n. 3 (D.N.M.), *report and
recommendation adopted,* 2012 WL 5378963 (D.N.M.) (acknowledging that "[c]ourts may take
judicial notice of whether or not an individual is a licensed attorney"). Although Plaintiff is
proceeding *pro se*, the Court "do[es] not afford her filings the liberal construction ordinarily
given to *pro se* pleadings because she is an attorney." *In re Hook*, 816 Fed. Appx. 269, 270
(10th Cir. 2020).

Having considered the Motion to Dismiss, the briefing, the First Amended Complaint (Doc. 6),

the controlling law, and for the following reasons, the Court grants in part the Motion to Dismiss

and denies Plaintiff's request to file a Second Amended Complaint.

*I. The First Amended Complaint*

Aside from Defendants, Plaintiff is suing the following Individual Defendants: Stephanie

A. Fuchs (Plaintiff's Group Supervisor), Jeffrey S. Smith (Hearing Office Director for the

Albuquerque OHO), and Jennifer Fellabaum.

In Count I, Plaintiff brings a Fair Labor Standards Act (FLSA) claim for unpaid overtime.

Plaintiff, a non-exempt worker, claims that she was willfully not compensated for working

through her lunch hours, at least five hours per week in excess of her 40-hour workweek.

Plaintiff contends that Individual Defendants and the SSA should have paid her overtime

compensation at 1.5 times her hourly pay rate.  Plaintiff also contends that she typically worked

through lunch from October 2017 to April 2019.  The Court notes that Plaintiff now withdraws

her allegations against Defendant Fellabuam as they relate to Count I.  (Doc. 16) at 8.

In Count II, Plaintiff brings an Americans with Disabilities Act (ADA) failure to

accommodate claim and an ADA retaliation claim.  Plaintiff claims that she is disabled with

osteoarthritis of the hands, which makes typing painful.  Plaintiff alleges that she asked

Defendant Fuchs to "not be assigned so many of the 'typing' heavy decisions," like template

based, less complex decisions, but Defendant Fuchs failed to provide that accommodation.

(Doc. 6) at ¶ 20.  Instead, Plaintiff alleges that Defendant Fuchs retaliated against her "by

increasing the type of assignments that would exacerbate Plaintiff's symptoms of pain and

swelling."  *Id.* at ¶ 21.  Plaintiff further alleges that Individual Defendants and the SSA would

not investigate her complaints about a failure to accommodate and "retaliated by attempting to

push Plaintiff out of her employment." *Id.* at ¶ 22.  The Court notes that Plaintiff has now

withdrawn her ADA claims as to the Individual Defendants.[2]  (Doc. 16) at 9.

The Court notes that Plaintiff agrees to withdraw Counts III and IV.[3]  (Doc. 16) at 2.

## II.  Standards of Review

### A.  Fed. R. Civ. P. 12(b)(1):  Lack of Federal Subject Matter Jurisdiction

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter

jurisdiction."  Fed. R. Civ. P. 12(b)(1).  It is well-established that "[f]ederal courts are courts of

limited jurisdiction; they are empowered to hear only those cases authorized and defined in the

Constitution which have been entrusted to them under a jurisdictional grant by Congress."

*Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994).  Furthermore, the

plaintiff bears the "burden ... to establish the court's subject matter jurisdiction by a

preponderance of the evidence."  *Southway v. Cent. Bank of Nig.*, 328 F.3d 1267, 1274 (10th Cir.

2003).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two

forms.

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction
> questions the sufficiency of the complaint. In reviewing a facial attack on the
> complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and
> challenge the facts upon which subject matter jurisdiction depends. When
> reviewing a factual attack on subject matter jurisdiction, a district court may not

---

[2] Plaintiff has withdrawn all claims against Defendant Fellabaum.

[3] The Court notes that Plaintiff mentions 42 U.S.C. § 1983 in the title of her First Amended
Complaint and in her jurisdiction paragraph, but does not set forth a Count that brings any
Section 1983 claim.  The Court, therefore, assumes that Plaintiff inadvertently mentioned
Section 1983 and is not actually bringing a Section 1983 claim.  Even so, Section 1983 does not
apply to federal employees.  *See, e.g., Greene v. Impson*, 530 Fed. Appx. 777, 779 n. 3 (10th Cir.
2013) (observing that Section 1983 "applies only to state actors").

> presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).  In this case, the Court construes the Rule 12(b)(1) motion as a factual attack because Defendants refer to a "Declaration of Carol Ziglar-Love" in their Rule 12(b)(1) discussion.

 *B.  Fed. R. Civ. P. 12(b)(6):  Failure to State a Claim Upon Which Relief May be Granted*

 Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint...." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level...." *Id.*

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  In making this assessment, courts view "well-pleaded factual allegations

in a complaint … in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

*III. Discussion*

    *A. Motion to Dismiss*

       *1. Count I: FLSA Claim*

Defendants argue the Court lacks subject matter jurisdiction over the FLSA claim and that, instead, the Court of Federal Claims has subject matter jurisdiction over the FLSA claim. Alternatively, Defendants argue that Plaintiff does not allege a plausible FLSA claim against the Individual Defendants because they are not "employers" as defined in 29 U.S.C. § 203(d).

       *a. Whether this Court has Subject Matter Jurisdiction*

It is well-established that "[m]ost suits for money damages against the United States proceed under the Tucker Act, 28 U.S.C. § 1491…." *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011). The Tucker Act "provides a limited waiver of the United States' sovereign immunity and grants 'jurisdiction [to] the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000.'" *Id.* "[T]he Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA, 29 U.S.C. § 216(b)." *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

On the other hand, "[t]he Little Tucker Act, 28 U.S.C. § 1346(a)(2), grants federal district courts concurrent jurisdiction over contract claims against the government where plaintiffs seek no more than $10,000 in damages." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1081 (10th Cir. 2006) (footnote omitted). The Little Tucker Act, likewise, applies to FLSA

claims for monetary damages. *See Parker v. King*, 935 F.2d 1174, 1178 (11th Cir. 1991)

(resolving that district court's jurisdiction over FLSA claims "derives solely from the Little

Tucker Act...."). "A plaintiff attempting to invoke the subject matter of the federal district

courts bears the burden to establish his or her claim does not exceed the $10,000.00 jurisdictional

limit established by the Little Tucker Act." *Cortez v. E.E.O.C.*, 585 F. Supp. 2d 1273, 1288

(D.N.M. 2007).

Defendants have presented evidence that Plaintiff's FLSA claim amounts to about

$13,001.25, well over the $10,000.00 jurisdictional limit under the Little Tucker Act. In fact,

"Plaintiff does not dispute the fact that compensation for the hours of overtime due are likely to

greatly exceed $10,000, particularly when the penalties for FLSA violations are added." (Doc.

16) at 4. Given that Plaintiff admits that this Court lacks subject matter jurisdiction over the

FLSA claim under the Little Tucker Act, Plaintiff requests that the Court transfer Count I to the

Court of Federal Claims instead of dismissing Count I without prejudice for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1). Plaintiff contends that a dismissal of Count I "will

extinguish some of the Plaintiff's time-limited factual basis for unpaid overtime under the

statute, even under the three year 'willful violation' provision...." *Id.* Next, Plaintiff argues

"that it would not be expeditious use of judicial and court resources to dismiss and require the

duplication of efforts by the [Court of Federal Claims] should Plaintiff be required to restart her

case in that forum." *Id.* Plaintiff contends that if her "claims are not resolved pre-trial" she will

seek a class action certification based on her FLSA claim. *Id.* at 5. Plaintiff, then, asserts that "it

is appropriate that the case be transferred to the Court of Claims, so that the large class of

plaintiffs seeking overtime may seek compensation in a forum which does not limit their

claims." *Id.* at 5.  In the alternative, Plaintiff requests that her FLSA claim "be considered

waived as to any damages in excess of $10,000 so that this Court may maintain jurisdiction." *Id.*

 Under 28 U.S.C. § 1631, if a court lacks subject matter jurisdiction over a civil action,

"the court shall, if it is in the interest of justice, transfer such action" to a court that has subject

matter jurisdiction "and the action … shall proceed as if it had been filed in … the court to which

it is transferred on the date upon which it was actually filed in … the court from which it is

transferred." "Although … § 1631 contain[s] the word 'shall,' [the Tenth Circuit has] interpreted

the phrase 'if it is in the interest of justice' to grant the district court discretion in making a

decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo v.

Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006).

 "In deciding between transfer and dismissal, we consider 'whether the claims would be

time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit,

and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of

filing that the court lacked the requisite jurisdiction." *Teufel v. Dep't of the Army*, 625 Fed.

Appx. 874, 876 (10th Cir. 2015) (citation omitted).  "[A] court is authorized to consider the

consequences of a transfer by taking a peek at the merits to avoid raising false hopes and wasting

judicial resources that would result from transferring a case which is clearly doomed." *Id.*

(citation omitted).  Another factor is judicial economy and whether "little pleading and no

discovery will need to be repeated should Plaintiffs refile in" another forum. *Grynberg v.

Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 109 (10th Cir. 2012) (citation omitted).  The plaintiff

has "the burden of proving grounds for a transfer." *Id.* at 108 (citation omitted).

*(1)  Whether FLSA Claim Would be Time-Barred if Dismissed*

The FLSA provides that a lawsuit "may be commenced within two years after the cause of action accrued …, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued…." 29 U.S.C. § 255(a).  "A claim for unpaid overtime under the FLSA 'accrues each time the employer issues a paycheck in violation of the FLSA.'" *Coldwell v. RITECorp Env't Prop. Sols.*, Civil Action No. 16-cv-01998-NYW, 2018 WL 5043904, at *3 (D. Colo.) (citations omitted).  Here, Plaintiff alleges willful unpaid overtime throughout her employment, ending on April 19, 2019.  (Doc. 6) at ¶ 7.  Plaintiff's last paycheck issued in alleged violation of the FLSA would have been in April 2019 or maybe even as late as in May 2019.  The three-year statute of limitations for a willful violation of the FLSA will not expire until April or May 2022.  Consequently, the FLSA claim is not time-barred.  This factor does not favor a transfer.

*(2) Whether the FLSA Claim is Likely to Have Merit*

The parties are arguing whether the remaining Individual Defendants are "employers" as defined in the FLSA.  Even if the remaining Individual Defendants are not "employers," Plaintiff could substitute the correct party.  Thus, the Court cannot conclude that it would be "transferring a case which is clearly doomed." *Teufel*, 625 Fed. Appx. at 876 (citation omitted).  Given that Plaintiff may not have technically stated a plausible FLSA claim, the substance of the claim, unpaid overtime, is not challenged and may likely have merit.  At most, this is a neutral factor.

*(3)  Whether Plaintiff Filed the FLSA Claim in Good Faith*

To a licensed attorney, like Plaintiff, the law regarding subject matter jurisdiction under the Tucker Act and the Little Tucker Act is quite clear.  Plaintiff easily could have calculated her FLSA monetary claim and discovered that subject matter jurisdiction lay with the Court of

Federal Claims under the Tucker Act.  "This is not a case in which jurisdiction … turned on 'the

existence of some elusive fact' about which [a *pro se* plaintiff] made an 'erroneous guess.'"

*Keaveney v. Larimer*, 242 F.3d 389 (Table), 2000 WL 1853994, at *2 (10th Cir. 2000) (citation

omitted).  Considering that it was clear at the time Plaintiff filed this lawsuit that this Court

lacked subject matter jurisdiction over the FLSA claim under the Tucker Act, it would be

problematic for the Court to find that Plaintiff, a licensed attorney, brought the FLSA claim in

good faith.  The good faith factor, likewise, does not support a transfer.

### *(4)  Expeditious Use of Judicial Resources*

Aside from asserting that she may pursue a class action if her claims are not resolved

prior to trial and that the Court of Federal Claims would provide overtime compensation not

limited to $10,000, Plaintiff does not explain exactly how a transfer would be an expeditious use

of judicial resources.  The Court notes that the parties have not yet conducted discovery.

Consequently, if Plaintiff refiles her FLSA claim in the Court of Federal Claims, the parties will

not have to repeat discovery, for example.  This last factor also favors dismissal.

The above factors indicate that the interest of justice favors a dismissal without prejudice

as opposed to a transfer to the Court of Federal Claims.  Plaintiff simply has not carried her

burden of proving that the Court should transfer the FLSA claim to the Court of Federal Claims.

As noted above, Plaintiff requests, in the alternative, that her damages in excess of

$10,000 be considered waived so that this Court may exercise subject matter jurisdiction over the

FLSA claim under the Little Tucker Act.  "Courts have held … that plaintiffs may explicitly

waive damages in excess of the Little Tucker Act's amount in controversy requirement to

continue to litigate in district court instead of the Court of Federal Claims."  *Armstrong v. United

States*, Case No.: 7:20-cv-00796-RDP, 2020 WL 8259117, at *2 (N.D. Ala.) (citing cases).  "To

effectively waive damages in an FLSA claim, the plaintiff must 'expressly and adequately' waive *all* damages ... exceeding $10,000 to bring the action before the district court." *Id.* (citations omitted).

Here, Plaintiff has agreed to a waiver of damages in excess of $10,000 only if the Court does not transfer the FLSA claim to the Court of Federal Claims.  Defendants argue that such a conditional waiver "does not 'clearly and adequately express' a desire to waive claims in excess of $10,000." (Doc. 17) at 5.  At least one court, however, has concluded that a conditional waiver is not improper.  *Delano v. Roche*, 391 F. Supp. 2d 79, 87 (D.D.C. 2005) (finding conditional waiver proper when plaintiff agreed to waive monetary reimbursement if "Court conclude[d] that a claim for such relief would preclude it from exercising jurisdiction").  The Court finds that Plaintiff has expressly and adequately waived her FLSA damages that exceed $10,000.  The Court, therefore, has subject matter jurisdiction over the FLSA claim under the Little Tucker Act.

> b.  *Whether Plaintiff has Plausibly Alleged that Remaining Individual Defendants are "Employers"*

Defendants also argue that the Court should dismiss the remaining Individual Defendants[4], Defendants Fuchs and Smith, with respect to the FLSA claim because they are not "employers" as defined by the FLSA.  The FLSA defines an "Employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

---

[4] As noted above, Plaintiff voluntarily dismissed Defendant Fellabaum from Count I, dismissed Count II against the Individual Defendants, and entirely dismissed Counts III and IV.

The Tenth Circuit has adopted the economic reality test for determining an employment relationship under the FLSA. *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (determining that "economic realities of the relationship govern" if individual is liable under FLSA as employer). "The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Id.* (citation omitted). This Court has held that a "[p]laintiff is not required to satisfy all four factors in the 'economic reality' test to establish that Defendants are her employers...." *Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1149 (D.N.M. 2020) (plaintiff addressed only two of economic reality test factors); *see also Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2019 WL 5268634, at \*5 (D.N.M.) (in deciding motion to dismiss FLSA claim, court held allegations sufficient to infer defendants were employers although plaintiffs addressed only one economic reality test factor).

As to Defendant Fuchs, Plaintiff alleges in her First Amended Complaint that Defendant Fuchs first was her assigned mentor and then her supervisor beginning in October 2018. (Doc. 6) at ¶¶ 15 and 26. Plaintiff alleges that when Defendant Fuchs supervised her, Defendant Fuchs instructed her to work through the lunch hour. *Id.* Plaintiff further alleges that Defendant Fuchs failed to investigate her overtime complaint and "tr[ied] to end Plaintiff's employment." *Id.* at ¶ 16. Viewing these allegations in the First Amended Complaint as true and in Plaintiff's favor, the Court can reasonably infer from those allegations that Defendant Fuchs supervised Plaintiff beginning in October 2018 and controlled Plaintiff's work schedule. Having demonstrated that Defendant Fuchs meets at least one of the economic reality test factors, the Court finds that Plaintiff has alleged sufficient facts at the pleading stage to raise an inference that Defendant

Fuchs is an employer within the meaning of the FLSA.  Hence, Plaintiff has stated a plausible FLSA claim against Defendant Fuchs.

With respect to Defendant Smith, the Hearing Office Director, Plaintiff does not allege any facts that show Defendant Smith had "the power to hire and fire employees, supervise[] and control[] employee work schedules or conditions of employment, determine[] the rate and method of payment, and maintain[] employment records." *Baker*, 137 F.3d at 1440.  Thus, Plaintiff has not alleged sufficient facts to demonstrate that the economic realities of the relationship between Plaintiff and Defendant Smith was one in which Defendant Smith could be considered an employer under the FLSA.  Plaintiff, therefore, has failed to state a plausible FLSA claim against Defendant Smith.

### c. Conclusion

First, the Court declines to transfer the FLSA claim to the Court of Federal Claims. Second, the Court has subject matter jurisdiction over the FLSA claim under the Little Tucker Act because Plaintiff has expressly waived any FLSA damages exceeding $10,000.  Finally, the FLSA claim against Defendants Saul, SSA, and Fuchs survives the Motion to Dismiss while the FLSA claim against Defendant Smith is subject to a Rule 12(b)(6) dismissal.

The record reflects that Defendant Fuchs has not been served with the lawsuit, despite more than ninety (90) days elapsing since the case was filed.  Fed. R. Civ. P. 4(m).  Plaintiff is hereby ordered to effect service on Defendant Fuchs within thirty (30) days from the date of entry of this Memorandum Opinion and Order, or show cause why service could not effected. Failure to serve Defendant Fuchs in this timeframe, or show cause why service could not effected, will result in dismissal of the case against Defendant Fuchs without further notification to Plaintiff.

### 2. Count II: ADA Claims

As an initial matter, Plaintiff concedes that the Court should construe her ADA claims under the Rehabilitation Act because the ADA does not apply to the federal government. *See Padilla v. Mnuchin*, 836 Fed. Appx. 674, 676 n. 1 (10th Cir. 2020) (observing that "federal employees are expressly excluded from coverage under the ADA" and federal employees' "exclusive remedy is under the Rehabilitation Act...."). The Court notes that "[c]ases decided under section 504 of the Rehabilitation Act are ... applicable to cases brought under the ADA and vice versa...." *Woodman v. Runyon*, 132 F.3d 1330, 1339 n. 8 (10th Cir. 1997); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) (applying "standards from the American with Disabilities Act in analyzing a Rehabilitation Act claim"). Defendants argue that Plaintiff has not pled either a plausible failure to accommodate claim or retaliation claim under the Rehabilitation Act.

### a. Whether Plaintiff has Alleged a Plausible Failure to Accommodate Claim

Discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity...." 42 U.S.C. § 12112(b)(5)(A).

"[A] failure to accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018). "Under the first step of the modified framework, a plaintiff must demonstrate that '(1) [she] is disabled; (2) [she] is otherwise qualified; and (3) [she] requested a plausibly reasonable accommodation.'" *Id.* (citation omitted). "If the plaintiff makes a showing on all three elements,

the burden 'shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" *Id.* (citation omitted).

Although Defendants do not dispute, for the purpose of this Motion to Dismiss, "that Plaintiff's osteoarthritis constitutes a disability within the meaning of the Rehabilitation Act," Defendants argue that Plaintiff has not alleged facts that show she is "otherwise qualified." (Doc. 9) at 9. The Tenth Circuit "has adopted a two-part analysis" to determine if a plaintiff is "otherwise qualified." *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997). "First, [the court] must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue." *Id.* at 1338-39 (citation omitted). Second, only if the court "conclude[s] that the individual is not able to perform the essential functions of the job," then the court "must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Id.* at 1339 (citation omitted).

Here, Plaintiff alleges in the First Amended Complaint that she "was an excellent employee of SSA, with excellent reviews by her managers and the judges for whom she wrote decisions, between August 6, 2017 and April 19, 2019." (Doc. 6) at ¶ 7. Writing those decisions necessarily involved physical movement, such as typing. Plaintiff, therefore, has alleged that she could perform the essential functions of her job, including typing, despite the osteoarthritis of her hands. SSA therefore was not required to provide Plaintiff a reasonable accommodation. Had the osteoarthritis prevented Plaintiff from typing, then SSA would have to give Plaintiff a reasonable accommodation. That, however, is not what Plaintiff has alleged.

Even assuming Plaintiff could not perform the essential functions of her job, Defendants assert that Plaintiff has failed to allege that she "requested a plausibly reasonable accommodation." *See Lincoln*, 900 F.3d at 1204. "An accommodation that would result in other employees having to worker [sic] harder or longer hours is not required." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (citing 29 C.F.R. § 1630.2(p)(2)(v)) (relevant factor in determining reasonableness of accommodation is "impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business"). For instance, "[s]lowing the production schedule or assigning plaintiffs lighter loads would fundamentally alter the nature of defendant's warehouse operation, a change not demanded by the law." *Id.*; *see also Valdez v. McGill*, 462 Fed. Appx. 814, 818 (10th Cir. 2012) (observing that "ADA's command for reasonable accommodation does not require employers to reallocate essential employee duties"); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996) (noting that "accommodation that would result in other employees having to work harder or longer is not required under the ADA").

In this case, Plaintiff alleges that she "requested that she not be assigned so many of the 'typing' heavy decisions." (Doc. 6) at ¶ 20. According to Plaintiff, those "'typing' heavy decisions" are those that "are more complex or involve multiple impairments or lengthy and/or complex treatments." *Id.* Apparently, the less "'typing' heavy decisions" are those that "are more 'template' based...." *Id.* Plaintiff argues that allowing her to perform work with less typing, *i.e.*, template-based typing, would not require her co-workers "to work harder-it would have required them to work differently." (Doc. 16) at 11. The Court does not accept the logic of this argument. If Plaintiff is writing only decisions that are less complex and template-based, it

15

logically follows that co-workers will be burdened with writing more complex decisions that are

decisions that Plaintiff would have otherwise written.  Plaintiff's request to redistribute harder

work to co-workers simply does not constitute a request for a plausibly reasonable

accommodation.

Even considering the allegations of the First Amended Complaint as true and in

Plaintiff's favor, the Court cannot reasonably infer from those allegations that Plaintiff was

"otherwise qualified," the second element of a *prima facie* Rehabilitation Act claim.   Plaintiff

has failed to state a plausible Rehabilitation Act claim.

### a.  Whether Plaintiff has Alleged a Plausible Retaliation Claim

Like a failure to accommodate claim under the Rehabilitation Act, a Rehabilitation Act

retaliation claim is analyzed under "the burden-shifting framework of *McDonnell Douglas*...."

*Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).  To

establish a *prima facie* retaliation claim, the plaintiff must show: "(1) that she engaged in

protected activity; (2) that she suffered a materially adverse action by [the employer] either after

or contemporaneous with her protected activity; and (3) a causal connection between the

protected activity and the adverse action."  *Id.*  "Thereafter, [the employer] may produce

evidence of a legitimate, nonretaliatory reason for the adverse action."  *Id.*  "If [the employer]

does so, the burden of production shifts back to [the plaintiff] to show that the proffered reason is

pretextual."  *Id.*

"For the purpose of this motion, Defendants will assume that Plaintiff's requesting an

accommodation was a protected activity."  (Doc. 9) at 11.  Defendants argue that Plaintiff has

not alleged facts that show she suffered a materially adverse action or that a causal connection

existed between Plaintiff's protected activity and an adverse action, the second and third elements of a *prima facie* case of retaliation.

"To establish an adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Reinhardt*, 595 F.3d at 1133 (citation omitted). The Tenth Circuit explained the scope of an adverse employment action as follows:

> An adverse employment action includes acts that "'constitute [ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" In our recent decision of *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004), however, we expressly held that an adverse employment action is not limited to such acts. Rather, we liberally interpret the second prong of the prima facie case and take a case-by-case approach, examining the "'unique factors relevant to the situation at hand.'" Nevertheless, "we will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action."

*Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (citations omitted). Moreover, "[c]onstructive discharge, like actual discharge, is a materially adverse employment action." *Rennard v. Woodworker's Supply, Inc.*, 101 Fed. Appx. 296, 308–09 (10th Cir. 2004) (citation omitted). On the other hand, "[a] 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim." *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016); *see also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (holding that failure to reasonably accommodate plaintiff "merely reclothes [plaintiff's] ADA discrimination claim, which we have already rejected, and it fares no better in this garb"). Also, an unsuccessful attempt to terminate an employee is not an adverse employment action. *See Militano v. Randstad Pros. US, LP*, 2015 WL 1636115, at *22 (S.D.

Fla.) (finding that employer's "*unsuccessful* attempts to terminate the plaintiff's employment were not adverse employment actions").

Plaintiff alleges that Defendant Fuchs retaliated against her "by increasing the type of assignments that would exacerbate Plaintiff's symptoms of pain and swelling," and "by attempting to push Plaintiff out of her employment." (Doc. 6) at ¶¶ 21 and 22.  Plaintiff alleges that she finally "determined that the best course of action was to resign on April 19, 2019, and work on obtaining the requested investigation and resolution of … issues outside of the Agency, rather than continue to suffer Defendant Fuchs' efforts to push her out of the Agency, while the other Defendants did nothing to investigate." *Id.* at ¶ 28.  The investigation and issues Plaintiff refers to involved Plaintiff's use of flextime leave without permission to drive Plaintiff's daughter to and from school. *See id.* at ¶¶ 26-28.

The Court liberally construes these allegations as retaliation through a constructive discharge.  To allege a plausible constructive discharge claim, Plaintiff "must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable." *Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir. 1998).  Notably, "[t]he plaintiff's subjective view of the employment environment and the employer's subjective intent with regard to discharging her are both irrelevant." *Id.*  However, "[i]f an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Id.* "Essentially, a plaintiff must show that she had 'no other choice but to quit.'" *Id.* (citation omitted).

Plaintiff alleges in her First Amended Complaint that she decided to resign based on issues related to her use of flextime to drive her daughter to and from school.  She further alleges that Defendant Fuchs "retaliated" against her by assigning her more typing-heavy decisions

when she requested a change in her workload.  As discussed above, this claim does not survive

the discrimination analysis and cannot survive simply by the attempted recharacterization as a

retaliation claim.  *Lucas*, 257 F.3d at 1261.  Critically, Plaintiff does not allege that Defendant

Fuchs' actions left her with no choice but to resign.  Simply, Plaintiff does not allege facts that a

reasonable person in her situation would have no other choice but to resign due to retaliation

based on her alleged request for a reasonable accommodation.

### B.  *Motion to Amend First Amended Complaint*

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleadings only with the opposing

party's written consent or the court's leave." Moreover, Rule 15(a)(2) makes explicit that "[t]he

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The purpose of

Rule 15(a)(2) is to provide litigants "the maximum opportunity for each claim to be decided on

its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d

449, 456 (10th Cir. 1982). "Refusing leave to amend is generally only justified upon a showing

of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to

cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S.*

*West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (citations omitted).

"A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).  Indeed, "[t]he futility

question is functionally equivalent to the question whether a complaint may be dismissed for

failure to state a claim" under Rule 12(b)(6).  *See id.*  Finally, "when conducting futility analysis

on a motion to amend, courts are 'generally confined to the four corners of the complaint' and

'cannot rely on outside evidence the parties may introduce.'" *Laurora v. Bayer HealthCare*

*LLC*, Civil Acion No. 16-cv-09041 (ES) (JAD), 2018 WL 3586272, at *5 n. 2 (D.N.J.) (quoting

*Tri3 Enterprises, LLC v. Aetna, Inc.*, 535 Fed. Appx. 192, 195 (3d Cir. 2013)).  Accordingly, the

Court will not "consider any factual assertions discussed in Plaintiff's briefing" which she did

not explicitly allege in the proposed Amended Complaint.  *See id.*

In the proposed Second Amended Complaint, Plaintiff alleges that Defendants Smith and

Fuchs were "employers" under the FLSA because they "ha[d] the power to hire, fire, maintain

personnel records and set rates of pay. . . . [and in fact] maintain[ed] personnel in their offices

and electronically, in the form of projects, evaluations, disciplinary notes, attendance and in

other ways; and rates of pay are set . . . by . . . Mr. Smith and by delegated authority by Ms.

Fuchs." (Doc. 16) at 20. Taking the allegations as true, Plaintiff plausibly alleges that Defendants

Smith and Fuchs were her "employers" within the meaning of the FLSA.

However, the Second Amended Complaint, as drafted, persists in seeking FLSA

compensation above the jurisdictional limit of this Court.  For the reasons explained above, the

Court will not transfer the case to the Court of Federal Claims, but is instead inclined to dismiss

the case without prejudice.  To this extent, the Second Amended Complaint would be futile and

subject to dismissal.

With respect to Count II, Plaintiff now includes additional detail and the entirely new

suggestion that Defendants could have installed "the Dragon software application" or could have

"grant[ed] Plaintiff the ability to use accruing sick time for longer breaks between typing-heavy

assignments." (Doc. 16) at 23.  Plaintiff does not, however, allege that she requested any of these

proposed accommodations.

Finally, Plaintiff now includes a throw-away line that Defendant Fuchs "began

documenting and proposing assorted fictive issues to find support for her decision to push

Plaintiff out of the office." *Id.* at 24.  Even taking this statement to be true, the allegations do not

push Plaintiff over the threshold problem with her claim:  Plaintiff voluntarily resigned from her position under circumstances that would not leave a reasonable worker feeling as though they had no choice but to quit.  The proposed amendment does not cure the defects, discussed above, with respect to Count II.

For these reasons, the Court denies Plaintiff's request to file a Second Amended Complaint.

*IV. Conclusion*

For the reasons stated above, the Court grants Defendants' Motion to Dismiss with Defendant Smith in Count I, and in its entirety in Count II.  Furthermore, the Court denies Plaintiff's request for leave to file a Second Amended Complaint.

IT IS, THEREFORE, ORDERED THAT:

1. Defendant Fellabaum is dismissed without prejudice;

2. Defendants' Motion to Dismiss (Doc. 9) is granted in part;

3. Defendant Smith is dismissed without prejudice;

4. Count II is dismissed without prejudice;

5. Plaintiff's request for leave to file a Second Amended Complaint (Doc. 16) is denied; and

6. Plaintiff shall effect service on Defendant Fuchs within thirty (30) days from the date of entry of this Memorandum Opinion and Order, or shall show cause in writing why such service could not be effected.

UNITED STATES DISTRICT JUDGE